UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NANETTE BATISTA-PEREZ,

Plaintiff,

-against-

TOWN OF CHESTER and LINDA ZAPPALA, sued in her individual capacity,

Defendants.

**OPINION & ORDER**

24-CV-01286 (PMH)

Philip M. Halpern, United States District Judge:

Nanette Batista-Perez ("Plaintiff") presses two claims for relief against the Town of Chester (the "Town") and its Town Clerk, Linda Zappala ("Zappala" and together, "Defendants"), alleging violations of her First Amendment rights stemming from Defendants' refusal to reappoint Plaintiff to her position as Deputy Town Clerk. (Doc. 16, "SAC").[1] Plaintiff filed her Second Amended Complaint, the operative pleading, on April 13, 2024. (*Id.*). In short, Plaintiff alleges that Defendants did not reappoint her as Deputy Town Clerk in retaliation for her and her husband's political activities, violating her First Amendment rights. (*Id.* ¶¶ 45-46).

Defendants filed an Answer to the Complaint on June 13, 2024, and the case proceeded to discovery. (Doc. 21). Discovery closed on February 20, 2025. (Doc. 31).

Defendants filed their motion for summary judgment, pursuant to the briefing schedule set by the Court, on September 26, 2025. (Doc. 48; Doc. 48-2, "Soller Decl."; Doc. 48-3, "Defs. Br.";

[1] Citations to specific pages of filings on the docket correspond to the pagination generated by ECF.

Doc. 48-15, "56.1 Stmt."; Doc. 48-21, "CntrStmt.").[2] Plaintiff filed her opposition (Doc. 49, "Pl. Br."; Doc. 50. "Pl. Decl."; Doc. 51, "Watkins Aff."), and the motion was fully briefed with the filing of Defendants' reply (Doc. 48-20, "Reply").

For the reasons set forth below, Defendants' motion for summary judgment is DENIED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from Defendants' Rule 56.1 Statement of Undisputed Material Facts and Plaintiff's responses thereto, Plaintiff's Statement of Additional Material Facts and Defendants' responses thereto, and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.

Plaintiff was appointed as Deputy Town Clerk for the Town by Defendant Zappala, the Town Clerk, in September 2020. (56.1 Stmt. ¶¶ 1-2). The Town Clerk is an elected official. (*Id.* ¶ 7). Plaintiff, to remain in her position, had to be reappointed by the Town Clerk each year. (*Id.* ¶ 6). Plaintiff was one of two Deputy Town Clerks for the Town; Heidi Schmidt served as the other Deputy Town Clerk during Plaintiff's tenure. (*Id.* ¶ 9). The Deputy Town Clerk position was classified as exempt under the New York State Civil Service Law. (*Id.* ¶ 10). Plaintiff's position

---

[2] Defendants, along with their motion, filed three Local Rule 56.1 Statements: a 56.1 Statement with no responses (Doc. 48-1); a 56.1 Statement with responses and counterstatement with no responses (Doc. 48-15); and a counterstatement with responses (Doc. 48-21). Plaintiff also filed a 56.1 Statement with her opposition. (*See* Doc. 52). None of these 56.1 Statements comply with the Court's Individual Practices, which require that "[t]he Rule 56.1 Statement with responses, together with any counterstatement and responses, shall be set out in a single document." Individual Practices Rule 4(E)(iv). The Court notes that the parties properly complied with the Court's Individual Practices Rule 4(E)(iv) when Defendants filed a 56.1 Statement with their pre-motion letter (Doc. 36-1), and, in accordance with the Court's Individual Practices Rule 4(E)(ix), the subsequent 56.1 Statements were "modified only to the extent of properly referencing the affidavits, exhibits, and other citations to documents actually submitted in support of the motion." Accordingly, the Court cites to Doc. 48-15 for Defendants' Rule 56.1 Statement with responses, and Doc. 48-21 for Plaintiff's Counterstatement with responses, as these versions most closely conform to the Court's rules.

gave her access to confidential information and documents and, thus, Plaintiff was asked to, and did, sign a confidentiality agreement upon her hiring. (*Id.* ¶¶ 11-12).

The job description for Plaintiff's position is as follows:

> Town Board Meeting Minutes-record/transcript in TC's absence, maintain meeting minutes official copy, correspondence secretary, mail sort-distribute, filing, copies, scanning incoming correspondence to Laserfiche, new resident mailings, update sign board, maintain TC calendar, maintain records – deeds/lawsuits/bonds/LOC's/agreements/vehicles, do not knock registry, dog licensing, process renewals through mail/window, mail renewal/delinquent notices, correspondence, archiving from files, hunting/fishing licenses, handicap permits, notary public, phones, election assistance, meals on wheels program – coordinate volunteers/assist creation of monthly calendars.

(*Id.* ¶ 46). Plaintiff's position required her to use a program called "Laserfische" to scan documents into the Town's system, and to use a computer. (*Id.* ¶¶ 19-21). The records Plaintiff maintained included letters, agreements, and records of dog licenses, town vehicles, lawsuits, and agreements between the Town and outside vendors. (*Id.* ¶¶ 14-15, 17). When Defendant Zappala could not attend Town Board Meetings, Plaintiff would attend and take minutes in Defendant Zappala's stead. (*Id.* ¶¶ 25-26). Plaintiff was also bilingual and would help constituents with translation for legal and administrative matters, though this was not part of her job description. (*Id.* ¶¶ 32, 46). Additionally, Plaintiff participated in the Town's Meals on Wheels Program, a meal-distribution program for senior citizens (*Id.* ¶ 39), though the parties dispute the extent of her influence over such program (CntrStmt. ¶ 4).

Plaintiff's position required frequent interaction with Defendant Zappala, and other elected officials would be present at the board meetings Plaintiff attended. (56.1 Stmt. ¶¶ 28-29). Plaintiff, on occasion, would deliver a message or call to the former Town Supervisor, Robert Valentine; on other occasions, she would deliver the message to Mr. Valentine's secretary. (*Id.* ¶ 30). Plaintiff, in

her role, would also receive and sort mail for elected officials other than Defendant Zappala. (*Id.* ¶¶ 33-35).

The extent to which Plaintiff would assume Defendant Zappala's duties in her absence is disputed. (*See id.* ¶¶ 37-38). Plaintiff testified that her assumption of Defendant Zappala's duties was limited to what is provided in her job description, *i.e.*, taking minutes of Town Board Meetings, checking emails, and answering phone calls. (*See id.* ¶ 37; Doc. 48-6, Soller Decl., Ex. C, "Pl. Dep. Tr." at 72:12-74:12). When asked "who would fill in for" Defendant Zappala if she were out of office, Plaintiff testified that "Heidi Schmidt would for whatever capacity she was able to." (Pl. Dep. Tr. at 72:12-17). Defendants, relying on Defendant Zappala's testimony, take the position that Plaintiff, along with Ms. Schmidt, were in charge and stood in Defendant Zappala's place in her absence. (*See* 56.1 Stmt. ¶ 38; Doc. 48-7, Soller Decl., Ex. D, "Zappala Dep. Tr." at 27:23-28:8 ("[T]hey both would've been in charge. They both would've had to stand in my place depending on what the circumstance might have been.")).

In 2023, Robert Courtenay, a Republican, primaried the incumbent Town Supervisor, Robert Valentine. (56.1 Stmt. ¶ 52). Plaintiff and her husband, Orlando Perez, supported Mr. Valentine. (*Id.* ¶ 53). Plaintiff's husband was "actively involved in Mr. Valentine's campaign," and both Plaintiff and he attended a fundraiser in support of Mr. Valentine. (*Id.* ¶¶ 54-55). Defendant Zappala supported Mr. Courtenay. (*Id.* ¶ 57). Mr. Valentine won the primary, and Plaintiff and her husband supported Mr. Valentine in the general election, attending another fundraiser for Mr. Valentine's campaign. (*Id.* ¶¶ 58-62). Defendant Zappala did not openly support any candidate in the general election. (*Id.* ¶ 63). Brandon Holdridge, a Democrat, won the general election in November 2023. (*Id.* ¶ 66).

Both Defendant Zappala and Plaintiff's husband were members of the Town's Republican Committee. (*Id.* ¶ 64). In 2023, the Republican Committee voted Defendant Zappala out of her position as vice chair. (*Id.* ¶ 65). Plaintiff's husband voted in favor of Defendant Zappala's removal. (*Id.*).

In December 2023, Plaintiff asked Defendant Zappala if she would be reappointed as Deputy Town Clerk, and Defendant Zappala indicated that she was unsure. (*Id.* ¶ 72). On December 22, 2023, Plaintiff again asked Defendant Zappala if she would be reappointed and, this time, secretly recorded their conversation. (*Id.* ¶ 75). The parties dispute whether Defendant Zappala told Plaintiff during this conversation that she would not be reappointed. (*Id.* ¶¶ 76-78, 81-83). However, the parties agree that Defendant Zappala told Plaintiff that she was concerned about Plaintiff's loyalty and whether she could trust Plaintiff. (*Id.* ¶ 79). Defendant Zappala also brought up Plaintiff's husband voting to remove her from the Town Republican Committee, Plaintiff attending a fundraiser for Valentine's re-election, and recent political events (CntrStmt. ¶¶ 9-10); and she referred to Plaintiff as "collateral damage" (*Id.* ¶ 8). Ultimately, Defendant Zappala informed Plaintiff, by letter dated December 22, 2023, that she was not reappointing Plaintiff to her position, and her term would end on December 31, 2023. (56.1 Smt. ¶ 85).

This litigation followed.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*,

442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. Of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is not the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary

judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Harford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her . . . claim, the District Court properly granted summary judgment dismissing that claim."). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

Plaintiff pleads two claims for relief: (1) First Amendment retaliation pursuant to 42 U.S.C. § 1983; and (2) violation of her First Amendment right to intimate association pursuant to § 1983. (SAC ¶¶ 45-46).

Plaintiff's claims for relief are brought pursuant to 42 U.S.C. § 1983. Section 1983 provides in pertinent part that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Thus, to state a claim under § 1983, Plaintiff must demonstrate "(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a

person acting under color of state law, or a state actor." *Id.* "The first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

I. First Amendment Retaliation

Defendants' sole argument with respect to Plaintiff's First Amendment retaliation claim is that Plaintiff's position is excepted from the protection from patronage dismissal afforded by the First Amendment. (Defs. Br. at 8-11).[3] For the reasons stated below, the Court finds that Defendants have not met their burden of establishing that Plaintiff fits such exception to warrant summary judgment in their favor.

The First Amendment generally prohibits as unconstitutional the practice of patronage dismissals because "patronage dismissals severely restrict political belief and association." *Elrod v. Burns*, 427 U.S. 347, 372 (1976). Consequently, the practice of terminating employees because of their political affiliations is only constitutional if it "further[s] some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained . . . outweigh[s] the loss of constitutionally protected rights." *Id.* at 363. It is the defendants' burden to meet this exacting standard. *Id.* at 362.

The Supreme Court, in *Elrod* and its progeny, recognized that where "an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." *Branti v. Finkel*, 445 U.S. 507, 517 (1980) (citing *Elrod*, 427 U.S. at 366); *see also Rutan v. Republican Party*, 497 U.S. 62, 71 n.5 (1990) ("In *Elrod*, we suggested that policymaking

[3] Defendants do not argue that Plaintiff's employment was ended for non-political reasons. (*See* Defs. Br.; Reply). Thus, the Court assumes without deciding that Defendants' refusal to reappoint Plaintiff was a patronage dismissal.

and confidential employees probably could be dismissed on the basis of their political views. In *Branti*, we said that a State demonstrates a compelling interest in infringing First Amendment rights only when it can show that 'party affiliation is an appropriate requirement for the effective performance of the public office involved.'" (citations omitted)).

The Second Circuit has outlined a non-exhaustive list of factors courts should consider in determining whether a particular position falls within the *Elrod-Branti* political dismissal exception. *See Vezzetti v. Pellegrini*, 22 F.3d 483, 486 (2d Cir. 1994). "These factors include whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders. *Id.* (first citing *Regan v. Boogertman*, 984 F.2d 577, 580 (2d Cir. 1993); and then citing *Ecker v. Cohalan*, 542 F. Supp. 896, 901 (E.D.N.Y. 1982)). No one factor is dispositive. *Id.* Instead, courts are "to assess all the factors in order to determine whether there is a rational connection between shared ideology and job performance.'" *Id.* (quoting *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988)). "In sum, the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518.

Here, it is undisputed that Plaintiff's position was exempt from civil service protection, and that she did not control others in her position. (*See* 56.1 Stmt. ¶ 10; CntrStmt. ¶ 2). The six remaining factors are hotly contested by the parties.

Defendants, for the second factor, argue that Plaintiff's position "did require some technical competence or expertise," listing Plaintiff's duties, which included filing documents, managing records, and inputting data; and pointing out that she "had to use a scanning program and Microsoft Word daily," and was "bilingual and would translate when needed . . . ." (Defs. Br. at 10). Plaintiff responds that her duties were "quintessentially clerical or administrative." (Pl. Br. at 11). The Court agrees with Plaintiff.

The *Elrod-Branti* "inquiry generally requires consideration of the duties of the office as set forth in the job description." *Morin v. Tormey*, 626 F.3d 40, 45 (2d Cir. 2010); *see also Hommel v. City of Long Beach*, No. 13-CV-03261, 2014 WL 1010654, at *3 (E.D.N.Y. Mar. 14, 2014) ("The *Elrod-Branti* inquiry focuses on 'the *duties inherent* in the offices held by the plaintiffs,' and not what the plaintiffs actually did while in office." (quoting *Gordon v. Rockland County*, 110 F.3d 886, 890 (2d Cir. 1997)). Thus, that Plaintiff "would translate as needed" is not determinative as this was not part of her official duties. (*See* Doc. 48-9, Soller Decl., Ex. F). Furthermore, the tasks described by Defendants are clerical and administrative in nature. *Accord Fishman v. County of Nassau*, No. 10-CV-03231, 2013 WL 1339466, at *7 (E.D.N.Y. Apr. 1, 2013) ("Plaintiff's job responsibilities were predominantly clerical and administrative. Plaintiff was responsible for copying, scanning and organizing the clerk items, creating agendas and calendars, managing the audio-visual equipment for the legislative meetings and recording votes."). Thus, the second factor weighs in Plaintiff's favor.

The Second Circuit has "condensed" the fourth through eighth factors, instructing courts "to ask 'whether the employee in question is empowered to act and speak on behalf of a policymaker, especially an elected official.'" *Butler v. New York State Dep't of Law*, 211 F.3d 739, 744 (2d Cir. 2000) (quoting *Gordon*, 110 F.3d at 890). As Defendants correctly point out, the Court

"look[s] at the power with which [Plaintiff] is vested by law, and which is inherent in the office." *Regan*, 984 F.2d at 580. (*See also* Defs. Br. at 9).

Here, Plaintiff's position is authorized by New York Town Law § 30(10)(a), which permits a town clerk to "appoint . . . a first deputy town clerk" who "shall possess the powers and perform the duties of the town clerk during the absence or inability to act of the town clerk, or during a vacancy in the office of town clerk." Town Law § 30(10)(a) also allows a town clerk to "appoint . . . up to two additional deputy town clerks whose duties and responsibilities shall be established by the town board." Town Law § 30(10)(a), thus, provides that the first deputy town clerk is authorized to act in the town clerk's stead, and that the duties and responsibilities of the "additional" deputy town clerks are to be established by the Town Board. *Accord Mule v. Town Bd. of Boston*, No. 801835-2016, 2016 N.Y. Misc. LEXIS 15808, at *4 (N.Y. Super. Ct. June 29, 2016) ("Only the Town Clerk has authority to appoint her deputies, though their obligations, unless appointed as First Deputy, may be set by the board."). Neither party cites any evidence regarding whether Plaintiff was the first deputy town clerk or one of the additional deputy town clerks. Further, Defendants have not submitted evidence that the Town Board authorized the additional deputy town clerks to act on Defendant Zappala's behalf in her absence.[4]

Furthermore, Plaintiff testified at her deposition that Ms. Schmidt "would fill in for" Defendant Zappala in her absence. (Pl. Dep. Tr. at 72:12-17). Defendant Zappala testified that "they both would've been in charge. They both would've had to stand in my place depending on what the circumstance might have been." (Zappala Dep. Tr. at 27:23-28:8). Consequently, there is

---

[4] To the extent Defendants argue that, because Town Law § 30(10)(a) allows the Town Clerk to appoint deputy clerks "at her pleasure," Defendants could terminate her for political reasons, the Court is not persuaded. In *Branti*, the Supreme Court found that assistant public defenders who served "at [the Public Defender's] pleasure" were not subject to the policymaker or confidential employee exception. 445 U.S. at 509-11.

a factual dispute over whether Plaintiff would have filled in for Defendant Zappala in her absence that the Court cannot resolve at summary judgment. Thus, although Plaintiff is appointed by an elected official—Defendant Zappala—the Court cannot determine whether she was "empowered to act and speak on behalf of" Defendant Zappala on the current record. Since "cases of doubt" should be resolved in Plaintiff's favor, *Elrod*, 427 U.S. at 368, the fourth through eighth factors weigh in Plaintiff's favor.

Defendants' arguments to the contrary are unavailing. Plaintiff's job description did provide that she would attend Town Board Meetings on behalf of Defendant Zappala in her absence, (*see* Doc. 48-9, Soller Decl., Ex. F), other elected officials would be present at these meetings, (56.1 Stmt. ¶ 29), and Plaintiff interacted with Defendant Zappala, an elected official, "on a daily basis" (*id.* ¶ 28). However, Defendants have not submitted any evidence that Plaintiff's attendance at these meetings and interactions with Defendant Zappala were in any way "responsive to [Zappala's] political leanings or partisan agenda." *Monette v. Cnty. of Nassau*, No. 11-CV-00539, 2015 WL 1469982, at *11 (E.D.N.Y. Mar. 31, 2015); *see also Fishman*, 2013 WL 1339466, at *7 (finding "the fact that Plaintiff attended a few majority party meetings . . . insufficient to support a finding as a matter of law that Plaintiff's position . . . falls under the policymaker exception.").

Defendants point to cases that found that deputies of certain elected officials are subject to the *Elrod-Branti* exception. However, the *Vezzetti* factors are a fact-specific inquiry. *See Gordon*, 110 F.3d at 889 n.4. And in the cases cited by Defendants, the deputies were authorized to act on behalf of the elected officials that appointed them. *See Regan*, 984 F.2d at 581 ("[T]he office of the Deputy Tax Collector 'shall act generally for and in place of the Receiver.'"); *Reeves v. City of Yonkers*, 348 F. Supp. 3d 264, 278 (S.D.N.Y. 2018) ("Plaintiff acted in [the city council member's]

name when she attended community and precinct council meetings, ribbon cuttings, and other public events on his behalf."); *Ecker*, 542 F. Supp. at 903 (finding deputy parks commissioner was a policymaker where he was "the sole deputy, statutorily charged to serve as the Commissioner's alter ego . . . ."). Here, Defendants have failed to show that Plaintiff was authorized to act on Defendant Zappala's behalf in her absence. Defendants also cite to *Kaluczky v. City of White Plains*, 57 F.3d 202, 208 (2d Cir. 1995), but there the Second Circuit did "not consult the factors typically reviewed to resolve the question of whether [the] office is a policymaking position because [the plaintiff-appellee's] complaint effectively concede[d] th[at] issue." (citation omitted).

Defendants also argue that Plaintiff "had some influence on government programs, as she was involved in the meals on wheels program and maintained the do not knock registry." (Defs. Br. at 10). Defendants cite Plaintiff's deposition testimony in which she testified that her involvement in Meals on Wheels was limited to "mak[ing] sure that the meals were picked up outside." (Pl. Dep. Tr. at 74:17-21). And Plaintiff further testified that she would simply "sign people up" for the do not knock registry "if they wanted it." (*Id.* at 83:12-21). This is insufficient to establish that Plaintiff "influenced" government programs. *See Morin*, 626 F.3d at 45 (finding the plaintiff "d[id] not influence government programs" even where her job description provided that she would "consult[] with judges and administrators 'to develop court policy,'" as "her primary duties [were] managing court operations.").

Finally, Defendants cite a confidentiality agreement signed by Plaintiff when she was first hired as a Deputy Town Clerk as evidence that she was a confidential employee. (*See* Reply at 2-3). However, just because an employee signs a confidentiality agreement, does not *per se* make them a "confidential" employee under the *Elrod-Branti* inquiry. *See Fishman*, 2013 WL 1339466, at *7 (finding that plaintiff's "access to confidential documents" did not support that she was a

policymaker or confidential employee where the "[p]laintiff's job responsibilities were predominantly clerical and administrative.").[5] Defendants are reminded that the inquiry here is not whether Plaintiff may be labeled as a "confidential" employee, but instead whether "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. The Court finds that, at summary judgment, Defendants have not so demonstrated.

Accordingly, Defendants' motion for summary judgment is denied as to Plaintiff's First Amendment retaliation claim.

## II. Intimate Association Claim

Plaintiff's second claim for relief is for violation of her right to intimate association guaranteed by the First Amendment. Defendants argue: (1) this claim likewise fails under the *Elrod-Branti* exception; (2) "there is no evidence whatsoever that Plaintiff was fired because of her husband's beliefs as opposed to her own beliefs, which were the same as her husband's"; and (3) "there is absolutely no evidence that Defendants interfered with Plaintiff's marriage or were motivated by a desire to do so." For the reasons stated below, the Court rejects each of Defendants' arguments.

First, the parties dispute whether the *Elrod-Branti* exception even applies to intimate association claims. (*See* Defs. Br. at 11-12; Pl. Br. at 17-18). Defendants rely on a number of out-of-circuit cases which have held that the *Elrod-Branti* exception does apply to intimate association claims. (Defs. Br. at 11-12). However, the Second Circuit has found that the exception does not

[5] The Court notes that the confidentiality agreement is an interoffice memorandum from the New York State Department of Health with the subject line "Vital Records Security and Confidentiality." (Doc. 48-8, Soller Decl., Ex. E). Neither party explains how the confidentiality agreement relates to Plaintiff's duties to Defendant Zappala. The confidentiality agreement appears to only relate to the release of public health records of members of the public, such as birth certificates and death certificates, and not any political activities of Defendant Zappala.

apply to such claims. *See Adler v. Pataki*, 185 F.3d 35, 47 (2d Cir. 1999) (finding that the plaintiff-appellant's intimate associate claim was not barred "even though he held a policy-making position."); *see also Sutton v. Village of Valley Stream*, 96 F. Supp. 2d 189, 193 (E.D.N.Y. 2000) ("Should defendants be able to show at trial that the employment decisions made regarding [plaintiff] had nothing to do with his father's political affiliations, they will prevail. If, on the other hand, it is proven that 'simple vindictiveness' was defendants' true motive, the First Amendment will have been violated." (citing *Adler*, 185 F.3d at 45)). "[T]his Court is required to follow Second Circuit precedent unless and until it is overruled in a precedential opinion by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." *Unites States v. Zelaya-Romero*, No. 15-CR-00174, 2018 WL 1033235, at *5 (S.D.N.Y. Feb. 21, 2018) (quoting *Boone v. United States*, No. 02-CR-01185, 2017 WL 398386, at *1 (S.D.N.Y. Jan. 30, 2017)). Regardless, having found that Defendants fail to meet their burden of proving that "there is a rational connection between shared ideology and job performance," *Vezzetti*, 22 F.3d at 486, even if the *Elrod-Branti* exception applied to Plaintiff's intimate association claim, Plaintiff's claim would not fail under that exception.

Next, Defendants argue that Plaintiff has put forth no evidence that she was not reappointed because of her husband's political beliefs, as opposed to her own political beliefs. (Defs. Br. at 12). This is belied by the record. Plaintiff has submitted evidence from which a jury could infer that Defendant Zappala told her, during their recorded conversation on December 22, 2023, that she was not being reappointed because of her association with her husband and that he "worked against" Defendant Zappala. (CntrStmt. ¶¶ 11-12; Watkins Aff., Ex. 1 at 19:13-21:25). This evidence would allow a reasonable jury to find that Plaintiff was terminated because of her husband's political beliefs.

Finally, Defendants argue that Plaintiff has failed to introduce evidence that Defendants interfered with or intended to interfere with Plaintiff's marriage. (Defs. Br. at 12-13). Plaintiff argues that, since she has pled a "First Amendment, as opposed to Fourteenth Amendment substantive due process, intimate association claim[]," she does not need "to show any interference or intended interference with the intimate relationship beyond the adverse action itself." (Pl. Br. at 19). Even assuming *arguendo* that Defendants' position is correct, the Second Circuit reaffirmed in *Patel v. Searles*, 305 F.3d 130, 137 (2d Cir. 2002), as it held in *Adler*, "that retaliatory dismissal is a sufficient burden on martial relationship to maintain [a] § 1983 action." (citing *Adler*, 185 F.3d at 44). Here, Plaintiff has put forth evidence that she was dismissed because of her association with her husband. (CntrStmt. ¶¶ 11-12; Watkins Aff., Ex. 1 at 19:13-21:25). Thus, Plaintiff's intimate association claim does not fail due to a lack of interference with Plaintiff's marriage.

Accordingly, Defendants' motion for summary judgment is denied as to Plaintiff's intimate association claim.

III. Qualified Immunity

Defendants argue that Defendant Zappala is entitled to qualified immunity. (Defs. Br. at 13-14). The doctrine of qualified immunity protects officials from liability for civil damages when, "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

The contours of a right are sufficiently clear if there is a case in which "'an officer acting under similar circumstances . . . was held to have violated' the Constitution." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam) (quoting *Escondido v. Emmons*, 586 U.S. 38, 43 (2019)). In other words, if an official "could have 'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct," then they are not entitled to qualified immunity." *Id.* (quoting *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015)). If an official's belief that his or her action does not violate clearly established law is "objectively reasonable," he or she is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013).

There are ample cases that have found that employees are not subject to the *Elrod-Branti* exception under facts more favorable to the Defendants here. In *Morin*, for instance, the Second Circuit found that the chief clerk of a family court was not a policymaker or confidential employee where she was "exempt from civil service protection, ha[d] some technical competence . . . and ha[d] contact with elected judges, but she ha[d] only two employees working for her and ha[d] no hiring authority, [was] not authorized to speak in the name of the Defendants or other policymakers, [could not] reasonably be perceived as a policymaker, d[id] not influence government programs, and [was] not responsive to partisan politics." 626 F.3d at 45. Other cases have similarly found that there is no "rational connection between shared ideology and job performance" under similar circumstances. *See, e.g.*, *Coogan v. Smyers*, 134 F.3d 479, 484 (2d Cir. 1998) ("The duties of the City Clerk are largely ministerial and include record keeping and the nondiscretionary issuance of permits and licenses. On these facts, political party affiliation would not be required for effective service as City Clerk."); *Visser v. Magnarelli*, 530 F. Supp. 1165, 1173 (N.D.N.Y. 1982) ("Plaintiff, however, only records, not reforms, Common Council policy.");

*Fishman*, 2013 WL 1339466, at *1 (holding that records clerk of county legislature was not subject to *Elrod-Branti* exception where the clerk had "minimal contacts with the majority party" and "occasional research and access to confidential materials"). Thus, given the evidence submitted by Defendants, it was not objectively reasonable, at the time Defendants refused to reappoint Plaintiff, for Defendant Zappala to believe that firing Plaintiff because of her political association did not violate clearly established law. In other words, Defendant Zappala "could have 'read' the relevant precedent beforehand and 'know[n]' that it proscribed [her] specific conduct." *Zorn*, 146 S. Ct. at 930 (quoting *Sheehan*, 575 U.S. at 616).

Defendants also argue that Defendant Zappala "is entitled to qualified immunity on Plaintiff's intimate association claim because a consensus of federal appellate courts addressing this issue have concluded that the *Elrod-Branti* exception" applies to intimate association claims, citing a number of out-of-circuit cases. (Defs. Br. at 14 (italics supplied)). However, in this Circuit, "[w]e look to Supreme Court and Second Circuit precedent existing at the time of the alleged violation to determine whether the conduct violated a clearly establish right." *Okin v. Vill. Of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009). And, as discussed above, the Second Circuit has found that the *Elrod-Branti* exception does not apply to intimate associate claims. *See Adler*, 185 F.3d at 47; *Sutton*, 96 F. Supp. 2d at 193. Thus, Defendants have failed to establish that Defendant Zappala is entitled to qualified immunity on Plaintiff's intimate association claim.

Accordingly, Defendants' motion for summary judgment on the grounds that Defendant Zappala is entitled to qualified immunity is denied.

## CONCLUSION

Defendants' motion for summary judgment is DENIED.

The parties are directed to file pre-trial materials in accordance with the Court's Individual Practices Rules 6(A) and 6(B) on or before October 14, 2026.

The Clerk of Court is respectfully directed to terminate motion pending at Doc. 48.

**SO ORDERED.**

Dated: White Plains, New York
September 1, 2026

PHILIP M. HALPERN
United States District Judge